**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| LEX CLAIMS, LLC et al., | |
| Plaintiffs, | |
| v. | CIVIL NO. 16-2374 (FAB) |
| ALEJANDRO GARCÍA PADILLA et al., | |
| Defendants. | |

**MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

COME NOW, co-defendants Hon. Alejandro García Padilla, Hon. Juan C. Zaragoza Gómez and Hon. Luis Cruz Batista, in their respective official capacities (collectively "defendants"), specially appearing and without submitting to the jurisdiction or venue of this Court, and hereby state and pray as follows:

**I.      INTRODUCTION**

Plaintiffs in this case allege that they "are beneficial owners of substantial amounts of the bonds that are explicitly protected by Puerto Rico's Constitution." Docket No. 25 at 3 (hereinafter "GO Bonds").[1]

On April 6, 2016, the Puerto Rico Legislature passed the "Puerto Rico Emergency Moratorium and Financial Rehabilitation Act" (Act 21-2016, hereinafter "Act 21"). In order to address Puerto Rico's current fiscal crisis, section 201 of Act 21 authorizes the Governor of Puerto

---

[1]      Plaintiffs allege that they own two categories of bonds: those issued by the Commonwealth of Puerto Rico and backed by a pledge of the Commonwealth's good faith, credit, and taxing power, ordinarily referred to as general obligation ("GO") bonds, and those issued by certain of the Commonwealth's public corporations and guaranteed by a pledge from the Commonwealth. We shall hereinafter refer to both categories of bonds as "GO Bonds."

Rico to declare a temporary moratorium on the payment of certain obligations. Pursuant to Act 21, on June 30, 2016 the Governor declared a temporary moratorium[2] on the payment of general obligation bonds of the Commonwealth of Puerto Rico (the "Commonwealth"). See Executive Order ("EO") 2016-30 (Docket No. 25-5).

On June 21, 2016 most of the plaintiffs in this case filed a preemptive action against the Commonwealth and the appearing defendants before the United States District Court for the Southern District of New York. See Jacana Holdings I LLC v. Commonwealth of Puerto Rico, Civil No. 16-4702 (Docket No. 26-1). In that action, plaintiffs alleged that any moratorium in the payment of GO Bonds pursuant to Act 21 was unconstitutional. Id. Plaintiffs requested, among other remedies (1) a declaration "that the Commonwealth is obliged to afford its public debt absolute payment priority over all other expenditures;" and (2) an order "enjoining any enforcement or implementation of [Act 21] as applied to [plaintiffs' bonds]." Id. at 39-40.

On June 30, 2016 the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Pub. Law 114-187, was enacted into law. PROMESA automatically stayed, "with respect to a "Liability," "the commencement or continuation ... of a judicial ... proceeding against the Government of Puerto Rico that was or could have been commenced before the enactment of this Act." Id. § 405(b)(1).[3] PROMESA also automatically stayed the commencement or

---

[2]    As relevant, section 201 authorizes the Governor to declare a temporary moratorium on the payment of certain obligations. Section 201(b) provides in part that, during a temporary emergency period that the Governor may declare pursuant to section 201(a), no act shall be done and no action shall be commenced that may result in recovery from or a judgment against the governmental entity for which the emergency period has been declared. Any stay of proceedings pursuant to section 201(b) expires on January 31, 2017, unless extended through Executive Order for a period not to exceed two months. Section 103(m) of Act 21.

[3]    The term "Government of Puerto Rico," as defined in PROMESA, includes officers such as defendants, sued in their official capacity (§ 405(i)(1)), as well as government instrumentalities (§ 5(11)).

continuation of a judicial proceeding to recover a "Liability Claim" against the Government of Puerto Rico that arose before the enactment of the Act. Id.

Plaintiffs in Jacana Holdings I LLC, supra, recognized and acknowledged that PROMESA's stay provisions "apply to the above-captioned action in its current form." Docket No. 26-2 at 2. However, shortly thereafter plaintiffs in this case filed a complaint (Docket No. 1) and subsequently an amended complaint (Docket No. 25), asking substantially the same form of relief. In essence, plaintiffs in this case are seeking a declaration that GO Bonds are entitled to priority over any other obligation of the Commonwealth and an order enjoining the enforcement of any statute allegedly affecting such priority.

In order to avoid the effects of PROMESA's stay provisions, plaintiffs in this action now argue that they are challenging Commonwealth statutes enacted after PROMESA and that their claims cannot be stayed because they are based on PROMESA itself. Plaintiffs' amended complaint contains two causes of action: (1) a claim for declaratory and injunctive relief pursuant to §§ 204(c)(3) and 207 of PROMESA; and (2) a request for relief from stay pursuant to § 405(e) of PROMESA, in order for plaintiffs to prosecute their first cause of action.

As will be shown in further detail below, plaintiffs simply lack an enforceable private right of action pursuant to §§ 204(c)(3) and 207 of PROMESA. Therefore, their amended complaint fails to state a cause of action and should be stayed or outright dismissed. Any attempt to circumvent PROMESA and seek an order from this Court regarding the priority of government expenditures is also barred by the Eleventh Amendment and the doctrine established in Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984). Finally, plaintiffs have failed to show cause to lift the stay mandated by PROMESA in order to prosecute any available claims.

II.     **STANDARD OF REVIEW**

Federal courts are courts of limited subject-matter jurisdiction, and "the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998). Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may challenge subject-matter jurisdiction in a Motion to Dismiss, "including ripeness, mootness, the existence of a federal question, diversity, and sovereign immunity," Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001), as well as standing, id. at 362-63.

"In deciding a motion to dismiss, the court must 'assume the truth of all well-pleaded facts in the complaint, drawing all reasonable inferences in the plaintiffs' favor." Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008) (citation omitted). Although it must accept as true a plaintiff's well-pled facts, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). Indeed, a complaint must be dismissed if the facts as pled do not state a claim for relief that is "plausible" on its face. See, Iqbal, 556 U.S. at 679. A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Factual allegations in a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (internal citations and emphasis omitted).

"While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." González v. United States, 284 F.3d 281, 288 (1st Cir. 2002). Even in the context of a Rule 12(b)(6) motion, however, the court may consider documents "the authenticity of which are not disputed by the parties; [] official public records; [] documents central to the plaintiffs' claim; or [] documents sufficiently

4

referred to in the complaint." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

### III.   ARGUMENT

    **A.    Plaintiffs lack an enforceable right of action pursuant to §§ 204(c)(3) and 207 of PROMESA.**

In their amended compliant plaintiffs allege that EO 2016-30, issued pursuant to Act 21, temporarily suspended payment of GO Bonds. They claim that because other government expenditures allegedly entitled to a lower level of priority are being paid while the payment of GO Bonds is temporarily suspended, the Commonwealth is violating its own Constitution and laws providing an absolute priority in the payment of so-called "Constitutional Debt" over all other Commonwealth expenditures. See, for example, Docket No. 25 at ¶¶ 41-46 (citing Article VI of the Puerto Rico Constitution and 23 P.R. Laws Ann. § 104(c)). Plaintiffs allege that, by making lower-priority payments while staying payment of outstanding GO Bonds, the Commonwealth violated the Puerto Rico Constitution and 23 P.R. Laws Ann. § 104(c) and in turn § 204(c)(3)(A) of PROMESA. Docket No. 25 at ¶52.

Plaintiffs also claim that the Fiscal Year 2017 ("FY17") budget approved by the Commonwealth also violates § 204(c)(3) of PROMESA by failing to appropriate enough funds to pay GO Bonds while allegedly diverting funds to other, lower-priority purposes. Docket No. 25 at ¶¶ 54-59. Finally, plaintiffs contend that PR Act 74-2016, signed into law on July 20, 2016, further serves to divert the Commonwealth's resources to the Government Development Bank of Puerto Rico ("GDB") by allegedly "restructuring" loans owed to GDB by the Commonwealth and its instrumentalities, causing the Commonwealth to take on new obligations for which it was not previously responsible and allegedly prioritizing payment of those obligations above the so-called "Constitutional Debt." Docket No. 25 at ¶ 60. Plaintiffs allege that PR Act 74-2016 and the

Commonwealth's actions pursuant to it violate § 204(c)(3) as well as § 207 of PROMESA. Docket

No. 25 at ¶63.

Section 204(c)(3)(A) of PROMESA provides as follows:

> During the period after a territory becomes a covered territory and prior to the appointment of all members and the Chair of the Oversight Board, such covered territory shall not enact new laws that either permit the transfer of any funds or assets outside the ordinary course of business or that are inconsistent with the constitution or laws of the territory as of the date of enactment of this Act, provided that any executive or legislative action authorizing the movement of funds or assets during this time period may be subject to review and rescission by the Oversight Board upon appointment of the Oversight Board's full membership.

Plaintiffs allege that the Commonwealth's actions pursuant to Act 21, the FY17 budget and

PR Act 74-2016 allow the transfer of funds outside the ordinary course of business and/or are at

odds with the Constitution or laws of Puerto Rico, in violation of § 204(c)(3)(A).

On the other hand, § 207 of PROMESA provides as follows: "For so long as the Oversight

Board remains in operation, no territorial government may, without the prior approval of the

Oversight Board, issue debt or guarantee, exchange, modify, repurchase, redeem, or enter into

similar transactions with respect to its debt." Plaintiffs allege that Act 74-2016 amounts to the

"restructuring" of GDB's public sector loan portfolio, in violation of § 207 of PROMESA.

Plaintiffs' amended complaint seeks declaratory and injunctive relief pursuant to §§

204(c)(3) and 207 of PROMESA, 42 U.S.C. § 1983 (the Civil Rights Act); 28 U.S.C. § 2201(a)

(the Declaratory Judgment Act). It is well settled that "Section 1983 does not create any

independent substantive rights..." but "merely provides remedies for deprivations of rights that are

enshrined elsewhere." Cardona Román v. University of Puerto Rico, 799 F. Supp. 2d 120, 131

(D.P.R. 2011) (citing Albright v. Oliver, 510 U.S. 266 (1994); Cruz–Erazo v. Rivera–Montañez,

212 F.3d 617 (1st Cir. 2000); Oklahoma City v. Tuttle, 471 U.S. 808 (1985)). The same is true of

the Declaratory Judgment Act. See Akins v. Penobscot Nation, 130 F.3d 482, 490 n. 9 (1st Cir.

1997); Colonial Penn Group, Inc. v. Colonial Deposit Co., 834 F.2d 229, 232 (1st Cir. 1987) (Declaratory Judgment Act does not create a substantive cause of action). Hence, plaintiffs' source of federal rights must derive from §§ 204(c)(3) and 207 of PROMESA. However, these statutory provisions are not the source of a private right enforceable by plaintiffs.

"Even when a federal statute does not explicitly provide for a private remedy, two different paths may be available to individuals seeking to enforce their rights under the provision. The statute may either include an implied right of action under the provision itself or be enforceable through a cause of action brought under 42 U.S.C. § 1983." Colón-Marrero v. Vélez, 813 F.3d 1, 15 (1st Cir. 2016). "The inquiries to determine whether such paths exist are similar and begin with the same question: did Congress intend to create a federal right?" Id. (citing Gonzaga University v. Doe, 536 U.S. 273, 283 (2002)).

An individual seeking to sue under an implied right of action "must show that the statute manifests an intent 'to create not just a private right but also a private remedy.'" Id. (quoting Gonzaga, 536 U.S. at 284, in turn quoting Alexander v. Sandoval, 532 U.S. 275, 286, (2001)). On the other hand, a plaintiff suing under § 1983 generally relies on that section to supply "a remedy for the vindication of rights secured by federal statutes." Id.; Gonzaga, 536 U.S. at 284.

"In order to seek redress through § 1983... a plaintiff must assert the violation of a federal **right**, not merely a violation of federal **law**." Blessing v. Freestone, 520 U.S. 329, 340 (1997) (emphasis modified). In Blessing, the Supreme Court considered three factors when determining whether such an enforceable federal right exists: 1) "**Congress must have intended that the provision in question benefit the plaintiff**", 2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would

strain judicial competence", and 3) "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms". Id. at 340-41 (emphasis added).

In Gonzaga, the Supreme Court disavowed certain liberal interpretations of Blessing which "allow[ed] plaintiffs to enforce a statute under s 1983 so long as the plaintiff f[ell] within the general zone of interest that the statute [was] intended to protect; something less that what is required for a statute to create rights enforceable directly from the statute itself under an implied private right of action." Gonzaga, 536 U.S. at 283. The Court specifically and categorically rejected "the notion that our cases permit anything short of an **unambiguously conferred right** to support a cause of action under § 1983." Id. (emphasis added). The Court explained that "it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." Id. (emphasis in original). Hence, the Court's implied right of action cases "should guide the determination of whether a statute confers rights enforceable under § 1983." Id.

Under Gonzaga, then, "[f]or a statute to create such private rights, **its text must be 'phrased in terms of the persons benefited**.'" Id. (quoting Cannon v. University of Chicago, 441 U.S. 677, 692 n. 13 (1979)) (emphasis added). In other words, individual rights will only be created when a statute is written "'with an unmistakable focus on the benefited class.'" Id. (emphasis modified). "Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Id. at 286.

While the text of §§ 204(c)(3) and 207 of PROMESA may restrict certain actions of the Commonwealth after the enactment of the act and while an Oversight Board is operational, it clearly does not create any new individual rights in favor of creditors of the Commonwealth such as plaintiffs. Section 204(c)(3)(A) of PROMESA specifically states that certain legislative action

at odds with that provision "may be subject to review and rescission **by the Oversight Board upon appointment of the Oversight Board's full membership**." (Emphasis added.) Section 204(c)(3)(B) of PROMESA specifically grants the Oversight Board certain rescission powers "[u]pon appointment of the Oversight Board's full membership."[5] The statute clearly involves a grant of authority to the Oversight Board, not individual rights enforceable by plaintiffs. The same is true of § 207 of PROMESA, which restricts certain actions of the Commonwealth "[f]or so long as the Oversight Board remains in operation."

Plaintiffs vaguely allege that §§ 204(c)(3) and 207 of PROMESA serve to protect the interests of bondholders (Docket No. 25 at ¶¶ 34 and 36), that creditors such as plaintiffs are directly injured by violation of these statutory provisions (id. at ¶ 68) and that because the Oversight Board has not yet been appointed,[6] enforcement of these provisions necessarily falls on plaintiffs pending the appointment of the Board. Id. at ¶ 69. These allegations fall short of the required showing, for several reasons.

In order to establish whether a statute intends to benefit the plaintiff in such a way as to confer an enforceable right, the plaintiff must do more than show that it "is an intended beneficiary of the statute or 'within the general zone of interest that the statute is intended to protect.'" Colón-Marrero, 813 F.3d at 17. "Rather, 'the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs.'" Id. (quoting City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120 (2005)).

---

[5]    It is unclear whether exercise by the Oversight Board of any power to rescind Puerto Rico legislative action would withstand constitutional scrutiny. However, such question is not before this Court. The appearing defendants reserve all their rights and defenses in this regard.

[6]    This Court may take judicial notice of the fact that the Oversight Board was appointed by the President on August 31, 2016. To the extent plaintiffs' amended complaint relied on the fact that an Oversight Board had not been appointed, these allegations have become moot.

Sections 204(c)(3) and 207 of PROMESA do not contain "rights creating language" and do not identify a "discrete class of beneficiaries." Long Term Care Pharm. All. v. Ferguson, 362 F.3d 50, 57 (1st Cir. 2004). Neither statutory provision speaks of persons benefitted, whether creditors of the Commonwealth or otherwise, but instead authorizes the Oversight Board to take certain actions. When a statutory provision "focuses instead upon the state as 'the person regulated rather than individuals protected,'" such focus suggests "no 'intent to confer rights on a particular class of persons.'" Id. (quoting Sandoval, 532 U.S. at 289). Sections 204(c)(3) and 207 of PROMESA attempt to place certain temporary restrictions on Commonwealth actions before the appointment of an Oversight Board and during its operation. See PROMESA § 204(c)(3) (applicable "[d]uring the period after a territory becomes a covered territory and prior to the appointment of all members and the Chair of the Oversight Board") and § 207 (applicable "[f]or so long as the Oversight Board remains in operation"). Evidently, the purpose of these provisions is to regulate certain Commonwealth actions through the Oversight Board, not to create rights enforceable by plaintiffs.

Plaintiffs' arguments do nothing but underscore this point. Plaintiffs claim that only they, as creditors, can enforce these provisions pending the Board's appointment. Not only is this argument moot or inapposite in light of the recent appointment of the members of the Board, but such a result simply could not have been the intent of Congress when it enacted PROMESA. Section 204(c)(3) literally grants the Oversight Board the authority to rescind legislative action by the Commonwealth. Regardless of the constitutionality of such grant of power on a federally created entity, it is evident that Congress could not have intended to grant a private party with interests adverse to the Commonwealth the authority to rescind legislative action.

Further, when Congress wanted to create privately enforceable rights under PROMESA, it expressly did so. For example, § 407 of PROMESA creates a cause of action in favor of creditors and against transferees of property "of any territorial instrumentality of Puerto Rico [that] is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on..." See PROMESA, § 407(a). Unlike §§ 204(c)(3) and 207 of PROMESA, this section specifically speaks about creditors as a discrete class of beneficiaries. It also provides a specific remedy before this Court. See PROMESA, § 407(b) ("A creditor may enforce rights under this section by bringing an action in the United States District Court for the District of Puerto Rico after the expiration or lifting of the stay of section 405, unless a stay under title III is in effect."). Had Congress wanted to provide creditors with an enforceable right and a remedy for violation of §§ 204(c)(3) and 207, it could have easily done so, as in the case of § 407.

Section 407 of PROMESA provides an affirmative remedy in favor of creditors for any alleged illegal transfers made by the Commonwealth or its instrumentalities. However, § 407 is expressly subject to the automatic stay provided by § 405 of PROMESA. See PROMESA, § 407(b). Plaintiffs' exclusive reliance on §§ 204(c)(3) and 207 of PROMESA is clearly an attempt to go around the PROMESA stay and accomplish through this action what they clearly could not do in the action commenced before the Southern District of New York. Plaintiffs pretend to ignore the stay and preemptively enjoin the Commonwealth from taking certain emergency measures while the Oversight Board becomes operational. Such a result is at odds with the purpose behind section 405 of PROMESA. See PROMESA § 405(n)(2) (the stay "allow[s] the Government of Puerto Rico a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits.").

Since plaintiffs' only allegedly substantive cause of action[7] rests solely on §§ 204(c)(3) and 207 of PROMESA and these statutory provisions do not provide a private right of action enforceable by plaintiffs, their amended complaint should be dismissed in its entirety.

**B.      Plaintiffs' claims regarding the priority of GO Bonds are barred by the Eleventh Amendment and <u>Pennhurst</u>.**

As shown above, §§ 204(c)(3) and 207 of PROMESA do not create private rights enforceable by plaintiffs. In light of the foregoing, plaintiffs' request for declaratory and injunctive relief regarding alleged violations of the Puerto Rico Constitution and laws is clearly barred from federal court by the Eleventh Amendment and the <u>Pennhurst</u> doctrine.

The Eleventh Amendment to the Constitution of the United States provides as follows:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI.

"The eleventh amendment, despite the absence of any express reference, pertains to Puerto Rico in the same manner, and to the same extent, as if Puerto Rico were a State." <u>De León López v. Corporación Insular de Seguros</u>, 931 F.2d 116, 121 (1st Cir. 1991). <u>See also</u> <u>Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. González–Feliciano</u>, 695 F.3d 83, 103 n. 15 (1st Cir. 2012) ("This Circuit has consistently recognized that 'Puerto Rico enjoys the same immunity from suit that a State has under the Eleventh Amendment.'").[8]

---

[7]      Plaintiffs' second cause of action merely requests relief from the PROMESA stay in order for plaintiffs to prosecute their first cause of action.

[8]      Defendants are well aware of the recent Supreme Court's decision in <u>Puerto Rico v. Sánchez Valle</u>, 136 S. Ct. 1863 (2016). That decision has no bearing on this case, as it did not even mention the Eleventh Amendment nor discuss its applicability in Puerto Rico. Unless and until the U.S. Supreme Court expresses a different view, the First Circuit cases regarding Eleventh Amendment immunity cited above are binding on this Court. <u>See</u> <u>Díaz Morales v. Commonwealth of Puerto Rico</u>, 2015 WL 4742512 at *11 (D.P.R. Aug. 11, 2015) (Gelpí, J.).

It is well-settled that, pursuant to the landmark case of Ex parte Young, 209 U.S. 123 (1908), "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief [against a state official in his or her official capacity] to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985). However, in Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) the Supreme Court found that the Ex parte Young exception to Eleventh Amendment immunity was inapplicable to suits against state officials on the basis of state law. Id. at 106 ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law."). See also Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 43 (1st Cir. 2006) ("[The Eleventh Amendment] does not allow injunctive relief against state officials for violation of state law..."); O'Brien v. Mass. Bay Transp. Auth., 162 F.3d 40, 44 (1st Cir. 1998) ("It is not the proper purview of a federal court to supervise state officials' compliance with state law.").

It has been held that the Pennhurst rationale applies equally to actions seeking injunctive as well as declaratory relief. S. Union Co. v. Lynch, 321 F. Supp. 2d 328, 334 (D.R.I. 2004); Tolman v. Finneran, 171 F.Supp.2d 31, 38 (D.Mass. 2001); Benning v. Bd. of Regents of Regency Universities, 928 F.2d 775, 778 (7th Cir. 1991) (holding that a declaratory judgment by a federal court based on state law would constitute "an end-run around *Pennhurst* that is equally forbidden by the Eleventh Amendment.").

Plaintiffs in this case allege that Commonwealth actions pursuant to Act 21, the FY17 budget and PR Act 74-2016 are at odds with "the absolute priority of Constitutional Debt" such as the GO Bonds allegedly held by plaintiffs. Docket No. 25 at ¶ 42. They claim that any action of the Commonwealth that impinges on such alleged "super-priority" is at odds with Article VI, Sections 2, 6 and 8 of the Puerto Rico Constitution and Puerto Rico laws defining the "order of priorities" of payment of Commonwealth obligations. 23 P.R. Laws Ann. §104(c). Id. at ¶¶ 41-46.

Plaintiffs are requesting an injunction (1) requiring defendants to segregate and preserve certain funds for plaintiffs' benefit as holders of GO Bonds; (2) prohibiting defendants from implementing certain transfers of funds provided for in the FY17 budget; and (3) prohibiting defendants from implementing PR Act 74-2016. Docket No. 25 at 27-28. Plaintiffs argue that defendants' alleged violation of the Puerto Rico Constitution and laws entitle them to a cause of action pursuant to §§ 204(c)(3) and 207 of PROMESA. However, as we saw above, that is simply not the case, as these sections of PROMESA do not provide a private right of action.

In the absence of any federal statutory provision supporting their claims, plaintiffs' amended complaint amounts to a request for injunctive relief against state officials for alleged violations of state law. This sort of relief is clearly barred by Pennhurst. Díaz-Fonseca, 451 F.3d at 43. This jurisdictional bar is of particular importance when plaintiffs' purported injunctive relief would directly interfere with the actions of the Commonwealth in the handling of its budget and fiscal affairs and would have a direct effect on the Commonwealth's Treasury. See, e.g., Hess v. Port Auth. Trans–Hudson Corp., 513 U.S. 30, 48 (1994) ("[T]he impetus for the Eleventh Amendment" is "the prevention of federal-court judgments that must be paid out of a State's treasury.").

**C.** **Plaintiffs' claims are stayed by PROMESA and plaintiffs lack "cause" to lift the stay.[9]**

**1.** **Plaintiffs' claims are stayed by PROMESA**

Congress enacted PROMESA in response to "a fiscal emergency in Puerto Rico." PROMESA § 405(m)(1). In particular, Congress determined that "[a] comprehensive approach to fiscal, management, and structural problems and adjustments that exempts no part of the Government of Puerto Rico is necessary, involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." Id., § 405(m)(4). To that end, Congress found that "an immediate—but temporary—stay is essential to stabilize the region for the purposes of resolving this territorial crisis." Id., § 405(m)(5) (emphasis added). It therefore automatically stayed, "with respect to a Liability," "the commencement ... of a judicial ... proceeding against the Government of Puerto Rico that ... could have been commenced before the enactment of this Act." Id., § 405(b)(1).

As Congress explained, "[t]he stay advances the best interests common to all stakeholders, including but not limited to a functioning independent Oversight Board created pursuant to this Act to determine whether to appear or intervene on behalf of the Government of Puerto Rico in any litigation that may have been commenced prior to the effectiveness or upon expiration of the stay." Id., § 405(m)(5)(A). Further, "[t]he stay is limited in nature and narrowly tailored to achieve the purposes of this Act, including to ensure all creditors have a fair opportunity to consensually renegotiate terms of repayment based on accurate financial information that is reviewed by an

---

[9]    Defendants are aware of the fact that today the Court entered an order denying "the Commonwealth defendants' motion to stay this case pursuant to section 405(b)(1)." Docket No. 32. However, since the applicability of PROMESA and plaintiffs' request for the lifting of the stay mandated by the act are part of plaintiffs' allegations and causes of action in their amended complaint, they are included in this motion. Defendants reserve the right to seek reconsideration of the Court's ruling regarding PROMESA for the reasons stated herein.

independent authority or, at a minimum, receive a recovery from the Government of Puerto Rico equal to their best possible outcome absent the provisions of this Act." Id., § 405(m)(5)(B). The stay "allow[s] the Government of Puerto Rico a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits." Id., § 405(n)(2).

Immediately upon enactment, PROMESA thus automatically stayed, "with respect to a "Liability,"[10] "the commencement or continuation ... of a judicial ... proceeding against the Government of Puerto Rico that was or could have been commenced before the enactment of this Act." Id., § 405(b)(1). PROMESA also automatically stayed the commencement or continuation of a judicial proceeding to recover a "Liability Claim" against the Government of Puerto Rico that arose before the enactment of the Act. Id.[11]

---

[10]     PROMESA defines a "Liability" as follows:

**The term "Liability" means a bond**, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money, **including rights, entitlements, or obligations** whether such rights, entitlements, or obligations arise from contract, statute, or any other source of law **related to such a bond**, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness in physical or dematerialized form, of which—

(A) the issuer, obligor, or guarantor is the Government of Puerto Rico; and
(B) the date of issuance or incurrence precedes the date of enactment of this Act.

PROMESA § 405(a)(1) (emphasis added).

[11]     PROMESA defines a "Liability Claim," in relevant part, as follows:

The term "Liability Claim" means, as it relates to a Liability....The right to an **equitable remedy for breach of performance if such breach gives rise to a right to payment**, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

PROMESA, § 405(a)(2)(B) (emphasis added).

Defendants respectfully submit that this action was automatically stayed pursuant to § 405 of PROMESA, as stated in the Notice of Automatic Stay filed on August 22, 2016 (Docket No. 26), incorporated herein by reference. In opposition to said Notice, "plaintiffs do not dispute that this lawsuit is 'related to' their bonds in some sense and is thus 'with respect to a Liability' in some fashion." Docket No. 28 at 5. Instead, plaintiffs argue that the PROMESA stay does not apply to this case because this is not an action that could have been brought before the enactment of PROMESA, given that this action depends on certain sections of PROMESA itself (sections 204(c)(3) and 207) in support of a cause of action. Id.

As discussed in the previous section, §§ 204(c)(3) and 207 of PROMESA do not create private rights enforceable by plaintiffs. Hence, plaintiffs cannot rely on these sections in order to avoid the effects of the PROMESA stay on their claims, which clearly involve a "Liability" as defined in the act.

In the bankruptcy context, it has been held that actions by creditors—even actions against third parties—brought as a result of a post-petition transfer of property are considered actions "to recover a claim against the debtor" and thus fall within the bankruptcy automatic stay. See 11 U.S.C. § 362(a)(6) (staying "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title"); In re Teleservices Group, Inc., 463 B.R. 28, 35 (Bankr. W.D. Mich. 2012) ("In sum, postpetition fraudulent transfer actions by creditors are prohibited by the automatic stay because they cannot stand independent of that creditor's claim against the debtor.") (quoting In re Colonial Realty Co., 980 F.2d 125, 132 (2d Cir. 1992) ("While a fraudulent transfer action may be an action against a third party, it is also an action 'to recover a claim against the debtor.' Absent a claim against the debtor, there is no

independent basis for the action against the transferee.")); <u>In re Saunders</u>, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989) (same).

PROMESA contains a stay provision similar to § 362(a)(6) of the Bankruptcy Code. <u>See</u> PROMESA § 405(b)(6) (staying "any act to collect, assess, or recover a Liability Claim against the Government of Puerto Rico that arose before the enactment of this Act"). As reasoned in the cases cited above, regardless of whether the action is brought against the Commonwealth or a third party transferee, any action by a creditor of the Commonwealth regarding a post-PROMESA transfer is an action "to recover a Liability Claim against the Government of Puerto Rico," because any such action "cannot stand independent of that creditor's claim against the debtor." <u>In re Teleservices Group, Inc.</u>, 463 B.R. at 35. That Congress intended the PROMESA stay to have a similar reach is not only evident from the fact that PROMESA includes a provision similar to § 362(a)(6) of the Bankruptcy Code, but also from the fact that PROMESA subjects to the automatic stay any post-PROMESA action by a creditor against a transferee of property transferred in violation of applicable law. <u>See</u> PROMESA, § 407.

**2.**      **Plaintiffs have not shown cause to lift the stay.**

PROMESA authorizes this Court, after notice and a hearing, to "'grant relief from the stay provided under subsection (b) of this section'" only "'for cause shown.'" <u>See</u> PROMESA § 405(e)(2). Otherwise, a court may grant relief from the stay only where "irreparable damage to the interest of an entity in property" will occur "before there is an opportunity for notice and a hearing." Id. § 405(g). In their amended complaint, plaintiffs request relief from the stay pursuant to section 405(e) of PROMESA.

In the bankruptcy context, "[i]n order to obtain relief from the stay, the [movant is] required to show cause for relief, in addition to its colorable claim on property of the estate." <u>In re Calore</u>

18

Exp. Co., Inc., 288 F.3d 22, 36 (1st Cir. 2002). The Bankruptcy Code "does not define 'cause';
but, generally speaking, 'cause' is said to exist when the harm that would result from a continuation
of the stay would outweigh any harm that might be suffered by the debtor or the debtor's estate if
the stay is lifted." Peerless Ins. Co. v. Rivera, 208 B.R. 313, 315 (D.R.I. 1997); see also In re
Opelika Mfg. Corp., 66 B.R. 444, 448 (Bankr. N.D. Ill. 1986) ("Cause to lift the stay exists when
the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other
creditors."); In re City of Detroit, Mich., 501 B.R. 702, 709 (Bankr. E.D. Mich. 2013) (applying a
balancing test in denying a motion to lift the stay in the context of a Chapter 9 bankruptcy).[12]

In their amended complaint, plaintiffs allege that they have shown "cause" to lift the
PROMESA stay because plaintiffs would "suffer significant harm" if their action is not allowed
to proceed and that this action is necessary to prevent "further unlawful dissipation of assets."
Docket No. 25 at ¶ 79. These allegations fall short of the required showing.

PROMESA imposes a standard of "cause," a standard given meaning by the statutory
context and legislative history.  The first and most important indicator of its meaning is the words
Congress used: Although the automatic stay is self-evidently patterned off the automatic stay
provision in bankruptcy, Congress did not copy the language for relief from that stay exactly.
Instead of allowing a court to grant relief from the stay "for cause, including the lack of adequate
protection of an interest in property of such party in interest," 11 U.S.C. § 362(d)(1), Congress
authorized a court to grant relief from the PROMESA stay only "for cause shown," PROMESA §
405(e)(2).  That choice was meaningful, as Congress elsewhere carefully adopted standards from

---

[12]     Some courts have outlined several factors that may be considered in determining whether there is "cause" to
lift a bankruptcy stay. See In re Sonnax Industries, Inc., 907 F.2d 1280, 1285 (2d Cir. 1990) (outlining factors). In
their amended complaint, plaintiffs do not refer to any of these factors in support of their request for lifting of the
PROMESA stay.

the Bankruptcy Code verbatim.  See, e.g., PROMESA § 405(g) (relief from PROMESA § 405(b) stay is appropriate without hearing if necessary to prevent irreparable damage to property that would occur before opportunity for hearing), and 11 U.S.C. § 362(f) (identical language under Bankruptcy Code's automatic stay).

And the language Congress chose—"for cause shown"—was not simply plucked from thin air, but instead drawn from the language in the Bankruptcy Act and Rule 11-44, which governed before the addition of the adequate protection language in the Bankruptcy Reform Act of 1978 and employed a higher standard for "cause."  See Matter of Anchorage Boat Sales, Inc., 4 B.R. 635, 641 (Bankr. E.D.N.Y. 1980) ("The court may, for cause shown, terminate, annul, modify or condition such stay.") (quoting Fed. R. Bankr. P. 11-44(d)) (emphasis added).  Under that standard, a movant had an "initial burden to show irreparable harm" before he could obtain the lifting of the automatic bankruptcy stay.  See id. at 641 & n.6 (citing Collier on Bankruptcy § 363.06 (15th ed. 1979) at 363-24 n.9).  And even that showing could be defeated by a debtor's showing that "a tipping of the equities" favored continuation of the stay.  See In re Rutter, 9 B.R. 878, 879 (Bankr. E.D. Pa. 1981) (internal quotation marks omitted).  PROMESA's legislative history suggests that Congress intended to adopt this irreparable damage requirement.  H.R. Rep. No. 114-602, pt. 1, at 51 (2016) ("If a party is determined to be subject to irreparable damage because of the imposition of the stay, the District Court is authorized to grant relief from the stay to such party.").  Given its choice of language and that legislative history, there are strong indicia that the PROMESA standard for "cause" requires both an initial showing of irreparable harm and a conclusion of the Court that the balance of the equities weighs in favor of the movant rather than the debtor.  See In re Rutter, 9 B.R. at 879.[13]  Plaintiff manifestly cannot satisfy that standard.

---

[13]     This interpretation also makes sense in light of the express provision for relief from the stay where irreparable harm would result before opportunity for notice and a hearing.  See PROMESA § 405(g).  The movant still bears the

As a threshold matter, it is well-settled that "if money damages will fully alleviate harm, then the harm cannot be said to be irreparable." K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914 (1st Cir. 1989). Plaintiffs' only possible harm from the alleged transfer of funds to which they claim a priority is purely economic and not irreparable.

Further, to the extent plaintiffs can show that they have a security interest in the Commonwealth's property or are otherwise entitled to a "super-priority" over other creditors of the Commonwealth and the provision of essential services, plaintiffs' interests are fully protected during the pendency of the stay. PROMESA provides that its interim stay "does not discharge an obligation of the Government of Puerto Rico or release, invalidate, or impair any security interest or lien securing such obligation." § 405(k).  Plaintiffs thus can show no harm to their bonds during the interim stay.

In addition, PROMESA provides that "if any property of any territorial instrumentality…is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property … then the transferee shall be liable for the value of such property."  PROMESA § 407(a).  Moreover, PROMESA allows creditors to enforce that right "by bringing an action in the U.S. District Court for the District of Puerto Rico after the expiration or lifting of the stay of section 405."  Id. § 407(b). If plaintiffs are correct that the Commonwealth has transferred or intends to transfer property to third parties in violation of plaintiffs' rights as holders of GO Bonds, then plaintiffs will be entitled to seek relief against the relevant transferees in a future such action.

---

initial burden to show irreparable damage, but the court is relieved from its ordinary obligation to weigh the harms, as it would not yet have had the opportunity to hear from the Commonwealth about those harms.  Where the court has time to afford notice and a hearing, it makes sense to require both the showing of irreparable harm and an analysis of the equities.

These arguments are not negated by Puerto Rico's current fiscal situation or the potential insolvency of the Commonwealth or its instrumentalities. While the solvency (not the insolvency) of a debtor has been used as grounds to lift the stay in bankruptcy, it has been held that solvency is not the sole factor to be considered by the courts. See In re Energy Future Holdings Corp., 527 B.R. 178, 198 (Bankr. D. Del. 2015), aff'd, CV 15-620 RGA, 2016 WL 627343 (D. Del. Feb. 16, 2016) (negating "the proposition that a debtor's **solvency** is, as a matter of law, cause to lift the automatic stay") (emphasis added).

If insolvency in the bankruptcy context constituted irreparable harm for creditors and were a cause for lifting the stay, the protection afforded by the automatic stay would be dead letter, as any creditor could easily lift the stay at any stage of an insolvent debtor's bankruptcy. In the current context, finding that the insolvency or potential insolvency of the Commonwealth or its instrumentalities is enough "cause" to lift the stay would make section 405 of PROMESA absolutely meaningless and would lead to a race to the courthouse, specifically the result PROMESA was designed to prevent. To allow such as result to materialize, especially shortly after the enactment of PROMESA and just days after the appointment of the members of the Oversight Board, would be extremely prejudicial to the Commonwealth and all of its creditors, and would turn PROMESA on its head.

The very essence and purpose of bankruptcy law is to give insolvent debtors "breathing room" and to provide for an orderly liquidation or reorganization, for the benefit of all creditors. In re Soares, 107 F.3d 969, 975 (1st Cir. 1997); In re Holtkamp, 669 F.2d 505, 508 (7th Cir. 1982) ("The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors."). "Because the stay is a fundamental protection for **all parties affected** by the filing of a petition in bankruptcy, it

should not be dismantled without good reason." In re Soares, 107 F.3d at 977 (emphasis added). The stay provisions of PROMESA mirror this fundamental purpose. See PROMESA §§ 405(m)(5)(B) and 405(n)(2).

The foregoing is especially true in the case of GO bondholders. If holders of GO Bonds are entitled to a "super-priority" over all the resources of the Commonwealth as alleged by plaintiffs, then upon the expiration of the PROMESA stay plaintiffs are guaranteed payment from a revenue stream that will not cease to exist as long as there is a Commonwealth. In this connection, assuming for argument purposes that plaintiffs are correct in their contentions, plaintiffs will suffer no harm from any transfers made by the Commonwealth during the stay period and are better situated than other creditors who could actually be harmed by the lifting of the stay and the interference with Puerto Rico's budget and laws advocated by plaintiffs.

Finally, plaintiffs have failed to show a "colorable claim." As demonstrated above, the sections of PROMESA relied on by plaintiffs in support of their only substantive cause of action do not create a private right enforceable by plaintiffs. In light of the foregoing, it makes no sense to lift the stay in this case in order to continue litigation of an action that cannot survive a motion to dismiss. "If the movant fails to make an initial showing of cause… the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Industries, Inc., 907 F.2d at 1285. As demonstrated above, plaintiffs do not have the slightest possibility of prevailing on their claims pursuant to §§ 204(c)(3) and 207 of PROMESA. The lifting of the stay to prosecute these claims should be denied.

3.      **The harm to the Commonwealth of Puerto Rico and the public interest manifestly outweighs any harm allegedly suffered by plaintiffs as a result of the automatic stay.**

PROMESA is an unprecedented federal statute designed to deal with a fiscal emergency affecting the Government of Puerto Rico and its instrumentalities.  PROMESA § 405(m). The stay mandated by PROMESA "is essential to stabilize the region for the purposes of resolving this territorial crisis." Id. § 405(m)(5).  Some of the express purposes of the stay are to: "(1) provide the Government of Puerto Rico with the resources and the tools it needs to address an immediate existing and imminent crisis; (2) allow the Government of Puerto Rico a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits; (3) provide an oversight mechanism to assist the Government of Puerto Rico in reforming its fiscal governance and support the implementation of potential debt restructuring." Id. § 405(n).  Ultimately, one of the main purposes of PROMESA is to "benefit the lives of 3.5 million American citizens living in Puerto Rico by encouraging the Government of Puerto Rico to resolve its long standing fiscal governance issues and return to economic growth." Id. § 405(n)(5). The lifting of the stay requested by plaintiffs would defeat these purposes.

The lifting of the stay would also fly in the face of the choices that Congress made in enacting PROMESA.  Specifically, Congress chose to establish an Oversight Board for Puerto Rico and to vest that Oversight Board with the authority to approve Fiscal Plans (as defined in the Act) for the Commonwealth or its instrumentalities.  See PROMESA §§ 101(b)(2), 201.  It authorized the Board to provide recommendations relating to the effect of Puerto Rico laws and court orders on the operations of the government. Id. § 205(a)(7). Rather than allow the Oversight Board to consider the current *status quo* or approve the relevant fiscal plans, movants essentially

ask this Court to pretermit the Oversight Board's review and preemptively enjoin the Commonwealth from taking action to address its current fiscal emergency. Far from showing "cause," this argument reveals the inappropriateness of plaintiffs' request.

Moreover, lifting of the stay in this case may lead other plaintiffs to also attempt to lift the stay of their claims involving a "Liability" under the Act. This would force the Commonwealth to litigate a multiplicity of actions, including constitutional claims, which could lead to inconsistent results. See, e.g., City of Detroit, 501 B.R. at 709 (stay provisions of Bankruptcy Code are "designed to consolidate into the bankruptcy case all proceedings that relate to and impact the case, so that the debtor, and, for that matter, all of the other parties, are not required to endure the expense and complexity of litigating multiple issues in multiple courts. Such duplicative litigation also creates the risk of inconsistent results."). At a minimum, it would force the Commonwealth to divert its attention from negotiating a voluntary resolution with its creditors to defending costly lawsuits, the exact opposite of what Congress intended. See PROMESA § 405(n).

At this juncture, days after the appointment of the Oversight Board, the public interest mandates preserving the *status quo* and avoiding a rush to the courthouse or the premature dismantling of statutory provisions created to address the current fiscal emergency in Puerto Rico. The PROMESA stay should be maintained in the interest of all stakeholders (PROMESA § 405(m)(5)(A)), to allow for an organized and coordinated process to take place after the Board makes certain decisions taking into consideration PROMESA's mandate and the current legal framework applicable to plaintiffs' and other bondholder claims.

**WHEREFORE**, defendants respectfully request that the Court declare that this action is stayed under Section 405(b)(1) of PROMESA, or in the alternative dismiss plaintiffs' amended complaint at Docket No. 25.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

In San Juan, Puerto Rico, this 2nd day of September, 2016.

**ANTONETTI MONTALVO & RAMIREZ COLL**
P.O. Box 13128
San Juan, PR 00908
Tel: (787) 977-0303
Fax: (787) 977-0323

**s/ Salvador Antonetti-Zequeira**
SALVADOR ANTONETTI-ZEQUEIRA
USDC-PR No. 113910
santonet@amrclaw.com

**s/ José L. Ramírez-Coll**
JOSÉ L. RAMÍREZ-COLL
USDC-PR No. 221702
jramirez@amrclaw.com

and

**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 879-5000
Fax: (202) 879-5200

**s/ Michael F. Williams**
MICHAEL F. WILLIAMS
*Pro Hac Vice*
mwilliams@kirkland.com