IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LEX CLAIMS, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO GARCÍA PADILLA, *et al.*, <br><br> Defendants. | Case No. 3:16-cv-02374 (FAB) |

**MOTION OF THE BANK OF NEW YORK MELLON, AS
TRUSTEE, TO DISMISS SECOND AMENDED COMPLAINT**

**TO THE HONORABLE COURT:**

The Bank of New York Mellon ("BNYM"), as trustee, through its undersigned counsel, moves for entry of an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Second, Fourth, Fifth, and Twelfth Counts of the *Second Amended Complaint* [Doc. No. 78] against BNYM for failure to state a claim upon which relief may be granted, and in support hereof, respectfully represents as follows:

**I.   PRELIMINARY STATEMENT**

1.   Plaintiffs hold beneficial interests in certain general obligation bonds issued by the Commonwealth of Puerto Rico (the "Commonwealth") and other bonds issued by certain of the Commonwealth's public corporations and guaranteed by the Commonwealth (collectively, the "GO Debt"). The GO Debt is supported by a pledge of the Commonwealth's good faith, credit, and taxing power. The GO Debt is not secured by any lien or charge upon any specific revenues or resources of the Commonwealth. BNYM has no legal or equitable relationship to the GO Debt.

2.      BNYM is the trustee for bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), an independent governmental instrumentality of the Commonwealth. The bonds issued by COFINA are secured by a dedicated revenue stream transferred by the Commonwealth to COFINA nearly a decade ago.  Plaintiffs and the GO Debt have no legal or equitable relationship to the COFINA bonds.

3.      Plaintiffs are upset that the Commonwealth temporarily suspended payment on the GO Debt, while COFINA continues to make payments to BNYM on COFINA's bonds.  Looking to improve upon their earlier bargains, Plaintiffs now want to undo the Commonwealth's transfer of tax revenues and take BNYM's collateral.  Through the Second Amended Complaint, Plaintiffs ask this Court to grant them a retroactive super priority lien on, and convert to Plaintiffs' use, the revenue stream transferred to COFINA and pledged as security for payment of the COFINA bonds in 2007.  This extraordinary request cannot be granted as a matter of law and, for that reason, should be dismissed.

4.      *First,* Plaintiffs are merely holders of beneficial interests in, rather than registered owners of, the GO Debt. As such, Plaintiffs lack standing to assert any rights or remedies under the resolutions governing the GO Debt.  *Second*, applicable law provides no basis for the GO Debt owners to assert any claims against BNYM—a complete stranger to Plaintiffs and the GO Debt.  Additionally, Plaintiffs' Twelfth Count must be dismissed as to BNYM because Plaintiffs fail to allege that BNYM deprived them of any federally protected rights under the color of state law.

5.      For these reasons, and as more fully discussed below, the Second, Fourth, Fifth, and Twelfth Counts of the Second Amended Complaint should be dismissed as against BNYM for failure to state a claim upon which relief may be granted.  In making this motion,

BNYM reserves the right to enforce its rights and interests under the COFINA Resolution, as defined below.

## II.     BACKGROUND

### A.     The Puerto Rico Sales Tax Financing Corporation[1]

6.      In July 2006, the Legislative Assembly of the Commonwealth imposed a tax (the "Commonwealth Sales Tax") at a rate of 5.5% on the sale or use of a broad range of goods and the delivery of various services in the Commonwealth. See Act of July 4, 2006, No. 117-2006, 2006 P.R. Laws 1231 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16),§ 2401(b).

7.      In July 2007, the Legislative Assembly created COFINA as an independent governmental instrumentality of the Commonwealth for the purpose of financing the payment, retirement, or defeasance of certain Commonwealth debt obligations through the issuance of new bonds secured by a pledge of a portion of the Commonwealth Sales Tax. See Act of July 5, 2007, No. 56-2007, 2007 P.R. Laws 173 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16) ("Act No. 56").

8.      Act No. 56 requires the Secretary of the Treasury to deposit the first receipts of the Commonwealth Sales Tax in each fiscal year in an amount specified by law (the "Pledged Sales Tax") in a special fund (the "Dedicated Sales Tax Fund") held and owned by COFINA separate and apart from the Commonwealth's general fund. Act No. 56, § 2; P.R. Laws Ann. tit. 13, § 12.

---

[1]     This Background is drawn from the well-pled allegations in the Second Amended Complaint, as well as legislative and documentary sources that are proper subjects of BNYM's *Request for Judicial Notice Pursuant to Federal Rule of Evidence 201* ("R.J.N.") filed contemporaneously herewith.

9. In consideration of COFINA's commitment to pay and retire certain of the Commonwealth's debt obligations, the Commonwealth transferred to COFINA the Dedicated Sales Tax Fund and all present and future collections of the Pledged Sales Tax.  Act No. 56, § 3; P.R. Laws Ann. tit. 13, § 12. ("[The Dedicated Sales Tax Fund] and all the funds deposited therein on the effective date of this Act and all the future funds that must be deposited in [the Dedicated Sales Tax Fund] pursuant to the provisions of [this Act] are hereby transferred to, and shall be the property of COFINA.").

10. The Legislative Assembly confirmed this commitment and directed that the Pledged Sales Taxis property of COFINA and, as such, "shall not be deposited in the Treasury of Puerto Rico, nor shall [it] constitute resources available to the Commonwealth of Puerto Rico, nor shall [it] be available for use by the Secretary of the Treasury of the Commonwealth of Puerto Rico."  Act No. 56, § 3; P.R. Laws Ann. tit. 13, § 12.  COFINA is authorized to "pledge and otherwise encumber all or part of [the Pledged Sales Tax] solely for the payment of principal, interest and redemption premium of . . . bonds and other obligations of [COFINA] to meet the purposes set forth in [Act No. 56]."  Act No. 56, § 4(c); P.R. Laws Ann. tit. 13, § 13(b).

### B. The COFINA Bonds

11. Pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution (as amended and supplemented, the "COFINA Resolution"), adopted by COFINA on July 13, 2007, COFINA issued several series of senior and first subordinate sales tax revenue bonds (the "COFINA Bonds").  See generally COFINA Resolution [R.J.N. Ex. A.].

12. The COFINA Resolution constitutes a contract among COFINA, BNYM, and the holders of the COFINA Bonds (the "COFINA Bondowners").  See COFINA Resolution

§§ 103, 801 [R.J.N. Ex. A., pp. 21, 60]. There are no third-party beneficiaries of or other parties with an interest in the COFINA Resolution. Id.§ 1205 [R.J.N. Ex. A., p. 82].

13. The COFINA Bonds are special obligations of COFINA payable from the Pledged Sales Tax without recourse against any other assets of COFINA. COFINA Resolution § 201 [R.J.N. Ex. A., p. 23]. Under their enabling resolution, the COFINA Bonds do not constitute a debt of the Commonwealth or a pledge of the good faith and credit of the Commonwealth or the taxing power of the Commonwealth. Id. Pursuant to section 501 of the COFINA Resolution and related security agreements between COFINA and BNYM, payment of the principal of, premium (if any), and interest on the COFINA Bonds and other amounts due under the COFINA Resolution are secured by, among other things, a pledge of the Pledged Sales Tax and a security interest in the funds and accounts maintained by the Secretary of the Treasury, as paying agent, as the first repository for all Pledged Sales Tax received from merchants and retailers, all amounts on deposit with BNYM under the COFINA Resolution, and all amounts required to be on deposit therein by the terms of the COFINA Resolution. See COFINA Resolution § 501 [R.J.N. Ex. A., p. 38].

14. In conjunction with issuance of the COFINA Bonds, the Commonwealth's Secretary of Justice confirmed that (i) Act No. 56 is a valid enactment of law, (ii) the Pledged Sales Tax will not constitute "available resources" of the Commonwealth for any purpose, including for purposes of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico (the "Constitution"), and (iii) the Pledged Sales Tax cannot be applied to cover debt service of the Commonwealth's general obligation bonds or guaranteed debt under the circumstances contemplated by Section 8 of Article VI of the Constitution. See Opinion of the Secretary of Justice, dated December 13, 2011 [R.J.N. Ex. B., p. 2].

15. Under Act No. 56, the Commonwealth may not limit or restrict the rights or powers of the appropriate officers of the Commonwealth to impose, maintain, charge, or collect the Pledged Sales Tax or limit or restrict the rights that are granted by the Act or the rights of COFINA to meet its obligations to COFINA Bondowners. Act No. 56, § 5(d); P.R. Laws Ann. tit. 13, § 14(c); COFINA Resolution § 706 [R.J.N. Ex. A., p. 54]. Act No. 56 further provides that no amendment to the Act shall undermine any obligation or commitment of COFINA. Act No. 56, § 5(d); P.R. Laws Ann. tit. 13, § 14(c); COFINA Resolution § 706 [R.J.N. Ex. A., p. 54].

C. **Role Of BNYM Under The COFINA Resolution**

16. BNYM serves as trustee under the COFINA Resolution for all series of the COFINA Bonds. COFINA Resolution § 801 [R.J.N. Ex. A., p. 60]. As trustee, BNYM exercises its rights and performs its duties under the COFINA Resolution for the benefit of BNYM and all of the COFINA Bondowners.[2]

17. The rights, duties, privileges, and immunities of BNYM under the COFINA Resolution are governed by New York law. See COFINA Resolution § 1211 [R.J.N. Ex. A., p. 83].

18. Under New York law, "[u]nlike [an] ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement." Meckel v. Cont'l Res. Co., 758 F.2d 811, 816 (2d Cir. 1985); see also Elliott Assocs. v. J. Henry Schroder Bank & Trust Co., 838 F.2d 66, 71 (2d Cir. 1988) (it is

---

[2] Plaintiffs recognize that the Trustee functions as an indenture trustee under the Resolution. See *Plaintiffs' Opposition to the Puerto Rico Funds' Motion for Leave to Intervene as Defendants to Second Amended Complaint*, Doc. No 146, pp. 7-8, n. 7 ("The bonds owned by plaintiffs do not provide for an indenture trustee," unlike the COFINA Bonds.); *Plaintiffs' Opposition to the Intervention Motion of Major COFINA Bondholders*, Doc. No. 155, p. 7, n. 7 (same).

"well-established" under New York law that the "duties of an indenture trustee are strictly defined and limited to the terms of the indenture."). "Given the relationship that the indenture trustee has with both the securities issuers and holders, courts 'have consistently rejected the imposition of additional duties on the trustee.'" Magten Asset Mgmt. Corp. v. Bank of New York, 15 Misc. 3d 1132, at *6, 841 N.Y.S.2d 219 (N.Y. Sup. Ct. 2007) (quoting Elliott Assocs., 838 F.2d at 71).

19. Consistent with New York law, the COFINA Resolution provides that BNYM undertakes to perform only such duties as are specifically set forth therein, and no implied covenants or obligations may be imposed upon BNYM. COFINA Resolution § 802 [R.J.N. Ex. A., p. 60]. The COFINA Resolution also provides BNYM with certain rights and protections. It obligates COFINA to pay BNYM's fees and expenses and to indemnify BNYM for any loss or liability and grants BNYM a senior lien securing COFINA's payment and indemnification obligations. Id. § 804 [R.J.N. Ex. A., p. 61]. Additionally, and without limitation, the COFINA Resolution protects BNYM from exposure to liability by providing, among other things, that BNYM cannot be liable in connection with the performance of its duties except for its own gross negligence or willful misconduct; BNYM cannot be liable for special, indirect, punitive, or consequential loss or damage of any kind; and BNYM has no obligation or duty to perform any act which would involve it in expense or liability, including but not limited to, instituting or defending any suit, unless provided with security and indemnity satisfactory to it. Id. § 802 [R.J.N. Ex. A., p. 60].

**D.      The General Obligation Debt**

20.      Plaintiffs allege that they are holders of beneficial interests in, rather than registered owners of, the GO Debt.  See Second Amended Complaint ¶¶ 5, 23.  Plaintiffs do not allege any rights or interests in the COFINA Resolution or the COFINA Bonds.

21.      Referencing by example the General Obligation Bonds of 2014, Series A (the "2014 GO Bonds"), issued by the Commonwealth pursuant to the March 11, 2014 Bond Resolution (the "2014 GO Resolution"), Plaintiffs allege that the GO Debt constitutes public debt, as described in Section 2 and Section 8 of Article VI of the Constitution.  See Second Amended Complaint ¶¶ 63, 113.

22.      Plaintiffs also allege that the good faith, credit, and taxing power of the Commonwealth are pledged for the payment of principal and interest on the GO Debt, id. ¶¶ 60-61, 113, and that, accordingly, the Secretary of the Treasury is required to pay the principal of and interest on the GO Debt "from any funds in the Treasury of the Commonwealth available for such purpose in the fiscal year for which said payment is required."  Id. ¶ 113 (quoting 2014 GO Resolution § 19 [R.J.N. Ex. C., p. 12]).

23.      The 2014 GO Resolution provides, as to any 2014 GO Bond, that "the person in whose name the same shall be registered shall be regarded as the absolute owner thereof for all purposes " 2014 GO Resolution § 18 [R.J.N. Ex. C., p. 12].  Similarly, the term "Bondholder" and words of similar import are defined to mean "any person who shall be the registered owner thereof."  Id. § 1 [R.J.N. Ex. C., pp. 3-4].  The registered owner of the 2014 GO Bonds is Cede & Co., as nominee of The Depository Trust Company.  See 2014 GO Resolution, Ex. B [R.J.N. Ex. C., p. B-1]; see also 2014 GO Resolution § 3(c) [R.J.N. Ex. C., pp. 4-6] (the

2014 GO Bonds "are held in DTC's book-entry system and registered in the name of DTC or its nominee").

24. With respect to the GO Debt, the "only remedies available to a Bondholder in the event that the Commonwealth does not make any payment of principal of or interest on the Bonds" are (i) to bring an action to compel the Secretary of the Treasury to apply available Commonwealth resources to the payment of the Bonds and (ii) to seek any other remedies available to any other holder of a Commonwealth bond to which its good faith, credit, and taxing power are pledged. 2014 GO Bond Resolution § 20 [R.J.N. Ex. C., p. 12]. The 2014 GO Bond Resolution does not authorize or permit the holders of beneficial interests in the 2014 GO Bonds to exercise any remedies.

25. Consistent with section 20(a) of the 2014 GO Resolution, Section 2 of Article VI of the Constitution provides that "the Secretary of the Treasury may be required to apply the available revenues including surplus to the payment of interest on the public debt and the amortization thereof at the suit of any holder of bonds or notes issued in evidence thereof." P.R. Const. art. VI, § 2. No other remedies are available to the holders of GO Debt under the Constitution or Commonwealth law.

E. **The Moratorium Act And Executive Order 2016-30**

26. On April 6, 2016, the Legislative Assembly enacted the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, No. 21-2016 (as amended, the "Moratorium Act"). The Moratorium Act empowers the Governor to issue executive orders (i) declaring a "state of emergency" with respect to the Commonwealth or its instrumentalities and (ii) suspending payment of principal and interest on "covered obligations." See Moratorium Act §§ 103(l), 201(a).

27.     Pursuant to the Moratorium Act, the Governor issued Executive Order 2016-30 (the "Executive Order"), declaring a state of emergency for the Commonwealth and a "moratorium on the Commonwealth's obligation to make payments on any bonds or notes issued or guaranteed by the Commonwealth."Executive Order [Doc. No. 78-5] ¶¶1, 8.  Accordingly, the Commonwealth temporarily suspended payment of principal of and interest on the GO Debt.

28.     The Executive Order does not affect COFINA or payment of principal of and interest on the COFINA Bonds.  The Pledged Sales Tax continues to be collected and remitted to BNYM for the benefit of COFINA Bondowners in accordance with applicable law and the COFINA Resolution.  Nothing in the Executive Order expands the rights of any registered owner of the GO Debt or any holder of any beneficial interest in the GO Debt.

**F.     The Puerto Rico Oversight, Management, and Economic Stability Act**

29.     Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") on June 30, 2016.  48 U.S.C. § 2101 *et seq.*  PROMESA is intended "to provide a method for [the Commonwealth] to achieve fiscal responsibility and access to the capital markets."  Id. § 2121.  To further that goal, PROMESA imposed a stay of creditor actions and created the Financial Oversight and Management Board (the "Oversight Board").  See 48 U.S.C. §§ 2121, 2194.  The Oversight Board is empowered, among other things, to (i) develop and approve a fiscal plan and (ii) review and rescind in its "sole discretion" certain executive orders that "alter[] pre-existing priorities of creditors in a manner outside the ordinary course of business."  48 U.S.C. § 2144(c)(3).

**G.     The Second Amended Complaint**

30.     Plaintiffs commenced this action on July 20, 2016, by filing their original complaint against Hon. Alejandro García Padilla, Hon. Juan C. Zaragoza Gómez, and Hon. Luis Cruz Batista, seeking to invalidate the Executive Order as violative of PROMESA.  Doc. No. 1.

Their Second Amended Complaint names the Commonwealth, COFINA, COFINA's Executive Director, and BNYM as additional defendants and added eleven new causes of action, including four causes of action (the Second, Fourth, Fifth, and Twelfth Counts) against BNYM.

31.     Plaintiffs ask the Court to negate the prior transfer of the Pledged Sales Tax to COFINA, deprive BNYM of its liens and security interests, and order BNYM to give Plaintiffs property held in trust for others.  See Second Amended Complaint pp. 66-68.

### III.    STANDARD OF REVIEW

32.     Rule 12 of the Federal Rules of Civil Procedure provides that the Court shall dismiss a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In determining whether a complaint states "a facially plausible legal claim," the Court utilizes a two-pronged approach.  See Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11-12 (1st Cir. 2011).  First, because Plaintiffs must do more than "parrot the elements of the cause of action," the Court should disregard statements that "offer legal conclusions couched as fact."  Id. at 12; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("formulaic recitation of the elements of a cause of action will not do.").  Second, the Court must assume the truth of all "properly pled factual allegations" and draw all reasonable inferences in Plaintiffs' favor.  Ocasio-Hernandez, 640 F.3d at 12.  The properly pled allegations must be sufficient "to raise a right to relief above the speculative level," and to permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.; see also Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  A complaint must cross "the line between possibility and plausibility," Twombly, 550 U.S. at 557, and it must be dismissed if it fails to state a claim for relief that is "plausible" on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

33. In the context of a Rule 12(b)(6) motion, the court may consider documents "the authenticity of which are not disputed by the parties; [] official public records; [] documents central to plaintiffs' claim; or [] documents sufficiently referred to in the complaint." Alternative Energy, 267 F.3d at 33.

**IV.   ARGUMENT**

   **A.   Plaintiffs Lack Standing To Pursue Claims In Regard To The GO Debt.**

34. Plaintiffs lack standing to pursue claims against BNYM in regard to the GO Debt because they do not allege that they are "registered owners" of the GO Debt.

35. Leading cases reject the notion that anyone other than a registered owner of the bonds has standing to assert claims under a bond indenture or resolution. For instance, the court in Repsol, S.A. v. Bank of New York Mellon, No. 652653/2012, 2014 WL 468910, 2014 NY Slip Op. 30352(U) (N.Y. Sup. Ct., Feb. 4, 2014), dismissed claims against a bond trustee based on lack of standing because the plaintiff was not an "Owner" as defined in the governing agreement. The agreement "clearly define[d] 'Owners' as 'the person in whose name a Receipt is registered on the books of the Depositary….'" Id. at *1. The court confirmed that only registered "Owners" had standing to sue and that "other persons, even if they were beneficial holders, such as plaintiff, lack standing to sue." Repsol, 2014 WL 468910, at *1; see also Theodore v. TD Ameritrade, Inc., No. 11760–072008, 2008 WL 465281, at *3 (N.Y. Sup. Ct. Feb. 11, 2008) (dismissing claims of beneficial holder of bonds where indenture conferred rights on "the record holder, not the beneficial holder"); Springwell Nav. Corp. v. Sanluis Corporacion, S.A., 46 A.D.3d 377, 377 (N.Y. App. Ct. 1st Dep't 2007) (holding that beneficial holder of note lacked standing to sue under indenture agreement where agreement specifically reserved that right to the registered holder of the note); MacKay Shields v. Sea Containers, 300 A.D.2d 165, 166 (N.Y. App. Ct. 1st Dep't 2002) (dismissing claim because alleged beneficial holder lacked

standing to sue on indentures where such right was reserved to "holder," defined as one in whose name note is registered).

36. Cases outside New York are to the same effect. For example, the court in Raymond James & Assoc. v. The Bank of New York Trust Co., N.A., No. 8:07-CV-239-T-27TBM, 2008 WL 186590, at *1 (M.D. Fla. Jan. 18, 2008), dismissed claims against a bond trustee because the plaintiff did "not plead that it was a 'registered holder' entitled to" rights under the Indenture. The indenture in Raymond James treated "only 'registered holders' as holders of the Notes *for all purposes*.'" Id. at *4 (emphasis in original). On this basis, the court concluded that the "holders to whom Defendant owed a duty were therefore limited by the express terms of the Indenture to 'registered holders,'" and dismissed the complaint. Raymond James, 2008 WL186590, at *4.

37. Similarly, the court in Heartland Holdings, Inc. v. U.S. Trust Co. of Texas N.A., 316 S.W.3d 1, 14 (Tex. App. 2010), likewise affirmed dismissal of claims against a bond trustee on the basis that the plaintiff lacked standing to sue where it was not a registered "Owner" of municipal bonds. The plaintiff in Heartland argued that it was entitled to sue to enforce bond indentures because it held a beneficial interest in the bonds, even though it was not the registered owner. Id. at 8. Rejecting this argument, the court held that a "direct interpretation" of the indentures precluded anyone but the registered "Owner" from bringing suit. Id.

38. In this case, Plaintiffs do not allege that they are "registered owners" of any series of GO Debt. To the contrary, Plaintiffs admit that they are suing as "beneficial owners" of the GO Debt. See Second Amended Complaint ¶¶ 5, 23. This admission is reinforced by the 2014 GO Resolution, which Plaintiffs cite as an example in the Second

Amended Complaint.  Just as the indenture in Raymond James treated "only 'registered holders as holders of the Notes,'" 2008 WL 186590, at *4, the 2014 GO Resolution provides:  "The person in whose name the [2014 GO Bond] shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes…."  2014 GO Resolution § 18 [R.J.N. Ex. C., p. 12].  Similarly, the term "Bondholder" is defined as "the registered owner."  Id. § 1 [R.J.N. Ex. C., pp. 3-4].  The registered owner of the 2014 GO Bonds is Cede & Co., as nominee of The Depository Trust Company.  See 2014 GO Resolution, Ex. B [R.J.N. Ex. C., p. B-1]; see also 2014 GO Resolution § 3(c) [R.J.N. Ex. C., pp. 5-6] (the 2014 GO Bonds "are held in DTC's book-entry system and registered in the name of DTC or its nominee").

39. Here, as in Repsol, Raymond James, and Heartland Holdings, Plaintiffs, as beneficial owners, lack standing to assert any rights or remedies under the GO Debt resolutions or in regard to the GO Debt.  Accordingly, all claims against BNYM (and, by extension, COFINA and its Executive Director) should be dismissed.

### B. Plaintiffs Have No Basis To Pursue Claims Against BNYM.

40. Even if Plaintiffs were "registered owners" of the GO Debt, the claims against BNYM should be dismissed because "registered owners" have no basis to assert any claims against BNYM—a complete stranger to Plaintiffs and the GO Debt.  Plaintiffs' only remedy is to pursue a mandamus action against the Secretary of Treasury.

41. As a general rule, bondholders' only remedy for default on payment of general obligation bonds is to seek a writ of mandamus against the controlling officer to use available revenues to pay the principal of and interest due on the bonds or, if there are no available revenues, to compel the levy of authorized taxes to produce new revenues.  See, e.g., Missouri v. Jenkins, 495 U.S. 33, 55 (1990) (observing "long and venerable line of cases" holding that "federal courts [can] issue the writ of mandamus to compel local governmental

bodies to levy taxes adequate to satisfy their debt obligations."); Faitoute Iron & Steel Co. v. City of Asbury Park, 316 U.S. 502, 510 (1942) ("The only remedy for the enforcement of such a claim is a mandamus to compel the levying of authorized taxes."); State ex rel. Buckwalter v. City of Lakeland, 150 So. 508, 512 (Fla. 1933) ("It is well settled that mandamus is the only remedy available to one holding a liquidated obligation of a municipal corporation to enforce the payment of his claim.").

42. The Puerto Rico Constitution affords Plaintiffs the right to bring a mandamus action seeking to compel the Secretary of Treasury to apply available revenues to pay the GO Debt, but it does not give Plaintiffs the right to usurp the Commonwealth's legislative or executive power and dictate *what* revenues are available to pay the GO Debt. See P.R. Const. art. VI, § 2 ("The Secretary of the Treasury may be required to apply the available revenues including surplus to the payment of interest on the public debt and the amortization thereof at the suit of any holder of bonds or notes issued in evidence thereof.").

43. The limitation on remedies available to holders of general obligation bonds is inherent in government finance. In Faitoute Iron & Steel Co., the Supreme Court explained:

> The principal asset of a municipality is its taxing power and that, unlike an asset of a private corporation, can not be available for distribution. An unsecured municipal security is therefore merely a draft on the good faith of a municipality in exercising its taxing power. The notion that a city has unlimited taxing power is, of course, an illusion. A city cannot be taken over and operated for the benefit of its creditors, nor can its creditors take over the taxing power. . . . [T]he practical value of an unsecured claim against the city is inseparable from reliance upon the effectiveness of the city's taxing power. The only remedy for the enforcement of such a claim is a mandamus to compel the levying of authorized taxes.

316 U.S. at 509-10.

44.    Plaintiffs' reference to the 2014 GO Resolution again reinforces this fundamental limitation on remedies available to holders of the GO Debt.  As explained there, the "only remedies available to a Bondholder in the event that the Commonwealth does not make any payment of principal of or interest on the Bonds" are to:

> (a) bring an action against the Secretary, in accordance with the provisions of Section 2 of Article VI of the Constitution, to compel the Secretary of the Treasury to apply available Commonwealth resources to the payment of the [2014 GO] Bonds, as constituting public debt of the Commonwealth, in accordance with the provisions of Section 8 of Article VI of the Constitution; and
>
> (b) seek any other remedies that are available under applicable law or in equity that are available to any other holder of a Commonwealth bond to which its good faith, credit and taxing power are pledged.

2014 GO Bond Resolution § 20 [R.J.N. Ex. C., p. 12].  This language plainly limits Plaintiffs' remedies.[3]

45.    Plaintiffs' claims against BNYM are far beyond the bounds of any remedy available to them under the GO Debt resolutions and applicable law.  Under the Constitution—the basis of Plaintiffs' Fourth and Fifth Counts—the only remedy available to registered owners of the GO Debt is a mandamus action against the Secretary of the Treasury for the sole purpose of compelling the Secretary to apply available resources to payment of the GO Debt.  Under

---

[3]   This limitation is supported by the maxim *expressio unius est exclusio alterius*.  The expression of particular remedies in the 2014 GO Resolution excludes any others.  See Realtime Data, LLC v. Melone, 961 N.Y.S.2d 275, 278 (N.Y. App. Ct. 2d Dep't 2013) ("the doctrine of 'expressio unius est exclusio alterious,' which means that the expression of one thing is the exclusion of the other); Cent. Housing Inv. Corp. v. Fed. Nat'l Mortgage Ass'n, 248 P.2d 866, 867 (Ariz. 1952) ("the doctrine of 'expressio unius' is that the expression in a contract of one or more things of a class, implies the exclusion of all things not expressed….").  See also Lamie v. United States Trustee, 540 U.S. 526, 537 (2004) (applying maxim in context of statutory construction); Marmolejos v. United States, 283 F.R.D. 63, 67 (D.P.R. 2012) (same); see also Sheehy v. Big Flats Community Day, Inc., 541 N.E.2d 18, 22 (N.Y. 1989) ("[w]here the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage").

section 303(3) of PROMESA—the basis of Plaintiffs' Second Count—unlawful executive orders are preempted, but preemption of the Executive Order does not result in the avoidance of the legislative transfer of a revenue stream that occurred nearly a decade ago.  See 48 U.S.C. § 2163(3) ("unlawful executive orders that alter, amend, or modify rights of holders of any debt or territory shall be preempted by [PROMESA].").  Indeed, nothing in applicable federal or Commonwealth law or the GO Debt resolutions expands the remedies available to Plaintiffs to sanction suits against third parties, such as COFINA and BNYM, who are complete strangers to the GO Debt and who have no obligations to, or common interests with, Plaintiffs.

46. Because Plaintiffs have no basis to pursue claims against BNYM (and, by extension, COFINA and its Executive Director), their claims must be dismissed.

**C. Plaintiffs Failed To Allege That BNYM Deprived Them Of Federal Rights Under Color Of State Law.**

47. Plaintiffs allege in the Twelfth Count that BNYM is liable to Plaintiffs under 42 U.S.C. § 1983 because BNYM deprived them of rights, privileges, and immunities secured by the laws of the United States, the United States Constitution, and the Puerto Rico Constitution, under color of the Executive Order and the Moratorium Act, and other statutes, ordinances, regulations, or customs of the Commonwealth.  See Second Amended Complaint ¶ 193.

48. Section 1983 imposes civil liability on any person acting under color of state law who deprives another of federally protected rights. 42 U.S.C. §1983.  A plaintiff must demonstrate two elements to recover under this section:  (i) "the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States;" and (ii) the defendant deprived him of this constitutional right "under color of law."  Adickes v. S. H. Kress & Co., 398

U.S. 144, 150 (1970).  Plaintiffs have not alleged facts sufficient to show that BNYM deprived Plaintiffs of any legal rights under the color of law.

49. *First*, nothing in the Second Amended Complaint suggests that BNYM deprived Plaintiffs of any rights.  Specifically, BNYM had no role in issuing the Executive Order or enacting the Moratorium Act.  For this reason alone, the Twelfth Count must be dismissed against BNYM.  See Flores-Silva v. McClintock-Hernandez, 827 F. Supp. 2d 64, 70 (D.P.R. 2011), aff'd, 710 F.3d 1 (1st Cir. 2013) ("bare assertions" that defendant "was aware of, and approved," a deprivation of rights is insufficient); Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 594-95 (1st Cir. 2011) ("there is nothing in the complaint beyond raw speculation to suggest that the named defendants participated—either as perpetrators or accomplices—in the decision" to cause the alleged harm) (emphasis omitted).

50. *Second*, a private party can be held liable under section 1983 only if his actions "may be fairly treated as that of the State itself."  Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157 (1978) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351(1974)).  The actions of a private party may be attributed to the state if the state, "by its law, has compelled the act" that deprives the individual of his federal rights.  Adickes, 398 U.S. at 170.  The Second Amended Complaint, however, fails to identify a state law that compelled BNYM to act in such a way as to deprive Plaintiffs of their federal rights.

51. Because Plaintiffs have not alleged any facts to support the contention that BNYM deprived Plaintiffs of federal rights under color of state law, the Twelfth Count of the Second Amended Complaint should be dismissed as to BNYM.

WHEREFORE, BNYM respectfully requests that the Court enter an order (i) granting this motion, (ii) dismissing the Second, Fourth, Fifth, and Twelfth Counts against BNYM with prejudice, and (iii) granting such other and further relief as may be just and proper.

Dated:  December 16, 2016

Respectfully submitted,

*/s/ Albéniz Couret-Fuentes*
Lee Sepulvado Ramos
USDC-PR Bar No. 211912
Albéniz Couret-Fuentes
USDC-PR Bar No. 222207
SEPULVADO & MALDONADO, PSC
252 Ave. Ponce de León, Suite 1900
Citibank Tower San Juan, PR 00918
Telephone:  (787) 765-5656
Facsimile:  (787) 294-0073
Email:  lsepulvado@smlawpr.com
Email:  acouret@smlawpr.com

Eric A. Schaffer (*pro hac vice*)
Luke A. Sizemore (*pro hac vice*)
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063
Email:  eschaffer@reedsmith.com
Email:  lsizemore@reedsmith.com

*Counsel for The Bank of New York Mellon, as trustee*

- 20 -

**CERTIFICATE OF SERVICE**

It is hereby certified that on this same date this document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Dated:  December 16, 2016

*/s/ Albéniz Couret Fuentes*
Albéniz Couret Fuentes
USDC-PR Bar No. 222207
acouret@smlawpr.com